REVERE & ASSOCIATES
A Limited Liability Law Company

TERRANCE M. REVERE          5857
CLARISSE M. KOBASHIGAWA     9314
MAGDALENA BAJON             11013
970 North Kalaheo Street, Suite A301
Kailua, Hawaii 96734
Telephone No: (808) 791-9550
Facsimile No: (808) 791-9551
terry@revereandassociates.com
clarisse@revereandassociates.com
magda@revereandassociates.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL S. BASKIN; PAIA PROPERTIES, LLC; SEASHORE PROPERTIES LLC; PAIA BAY PROPERTIES LLC and PAIA PARK, LLC, all Hawaii limited liability companies,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>EC PAIA LLC, a Delaware Limited Liability Company; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100; DOE CORPORATIONS 1-100; DOE ENTITIES 1-100,<br><br>                    Defendants. | Case No. CV 20-00216 WRP<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT; EXHIBIT A; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE**<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Judge: Honorable Wes Reber Porter |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs MICHAEL S. BASKIN and PAIA PROPERTIES, LLC;

SEASHORE PROPERTIES LLC; PAIA BAY PROPERTIES LLC and PAIA

PARK, LLC, all Hawaii limited liability companies, by and through their

attorneys, Revere & Associates LLLC, hereby file their First Amended Complaint

pursuant to Hawaii law and this Court's Order Granting In Part And Denying In

Part Defendant EC Paia LLC's Motion For Partial Dismissal Of The Complaint

filed on August 31, 2020 (ECF No. 26), as follows:

### INTRODUCTION

This lawsuit involves two contracts (the Land Agreement and the Parking

Lot Agreement) that Plaintiffs and Defendant signed in December 2016 related to

the real property located in Paia, Maui. Defendant failed to perform under both

contracts and ignored all communications from Plaintiffs, necessitating this action.

### I.      JURISDICTION AND VENUE

This action was originally filed in the Circuit Court of the Second Circuit,

State of Hawaii and removed under 28 U.S.C. 1441(a). This Court has jurisdiction

over the parties and the subject matter of this action under 28 U.S.C. 1332(a).

### II.      PARTIES

1.      Plaintiff MICHAEL S. BASKIN ("Plaintiff Michael Baskin") is a

resident of Paia, County of Maui, State of Hawaii and the interest holder in the

Property Tax Map Key No. (2) 2-2-5-005:018, as a result of a Unilateral

Confirmation of Agreement Dated December 15, 2015, recorded in the Bureau of

Conveyances of the State of Hawaii on November 15, 2019 and recorded as

Document No. A-72580570.

2.      Plaintiffs PAIA PROPERTIES, LLC; SEASHORE PROPERTIES

LLC; PAIA BAY PROPERTIES LLC and PAIA PARK, LLC are all Hawaii

limited liability companies (collectively, the "Paia Properties") doing business in

the County of Maui, State of Hawaii.

3.      Defendant EC PAIA LLC is a Delaware limited liability company and

owns the real property identified as Tax Map Key No. (2) 2-2-5-005:018 by way of

Limited Warranty Deed dated December 20, 2016. The sole member/manager of

defendant is Eagle Canyon Capital, LLC. The sole member of Eagle Canyon

Capital LLC is Sam Hirbod, a citizen of California.

4.      Plaintiffs have reviewed the records that were made available to them

in order to ascertain the true and full names and identities of all defendants in this

action, but no further knowledge or information regarding the parties responsible is

available at this time and Plaintiffs are unable to ascertain the identity of the

defendants in this action designated as JOHN DOES 1-100, JANE DOES 1-100,

DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100 (hereinafter

collectively referred to as "Doe Defendants"); said defendants are sued herein

under fictitious names for the reason that their true names and identities are unknown to Plaintiffs except that they may be connected in some manner with Defendants and may be agents,  attorneys, servants, employees, employers, representatives, co-venturers, co-conspirators, associates, or independent contractors of Defendants and/or were in some manner responsible for the injuries or damages to Plaintiffs and their true names, identities, capacities, activities, and/or responsibilities are presently unknown to Plaintiffs or their attorneys.

### III.   FACTS

### *The Property*

6.      The real property which is the subject of this action is all of that certain real property located in Paia, County of Maui, State of Hawaii, being more fully identified as Tax Map Key No. (2) 2-2-5-005:018, designated as Lot A-1-B of the Paia Post Office Subdivision and more fully described in Exhibit "A" attached hereto and incorporated herein by reference (the "Property").



7.      The Property is bordered on the north by Hana Highway, and on the east by Baldwin Avenue, the two major roads connecting the North Shore, Upcountry and East Maui. The western border is about five miles from the Maui's main airport in Kahului. The Property extends to the south up gently sloping agricultural land with spectacular ocean and mountain views. The Property is directly adjacent to the present Paia Town commercial center, and the Hana Highway frontage sits directly across from the most popular and beautiful Paia beaches, as well as the Maui Country Club and Golf Course.

The Property is comprised of two components: (i) approximately 300 acres zoned  as agricultural land with a development entitlement of up to 21 ocean-view lots with a minimum lot size of two acres (the "Ag Lots") and (ii) approximately 40 acres that are designated for inclusion in the "Paia Expansion Growth Area" by the County of Maui as a part of the Maui County General Plan 2030 which are pre-approved for development as a high-density residential and commercial district.

### *Purchase Contract*

8.      In approximately July of 2016, Plaintiff Michael Baskin ("Baskin") and Paia Properties, LLC (Paia LLC and collectively with Baskin, the Baskin Parties) entered into a Commercial Real Property Purchase and Sale Agreement dated July 19, 2016 ("PSA") with Alexander & Baldwin, LLC ("A&B") for the purchase of the Property.

9.     In December 2016, Baskin Parties and Defendant EC Paia LLC ("EC Paia") started discussing a successful joint venture to develop the Property ("Project").

10.     On December 2, 2016, Defendant EC Paia, via its sole member Sam Hirbod, and Plaintiff Michael Baskin discussed the development potentials of the Property. EC Paia, via Sam Hirbod, represented that the fact that Plaintiff Baskin was involved and what he did and what he was bringing into the Project ranked this Project in his top 3 business ventures, and he further described that other business ventures he was involved included investments in technology, fossil fuels, NBA, aviation, retail and development making them $50-250 Million dollars projects. Sam Hirbod described his intentions to begin developing the twenty-one lots, the parking lot, and the beach front. The development was to add value to community and provide prosperity for numerous people for several decades.

11.     On December 2, 2016, Sam Hirbod described the Project to be more than commercial advantage or profit. The purpose of the development was to build a community like Bellevue, Washington. Sam Hirbod described the project as a sizable scale project, including mixed use, hotel, school, ranch style and high-end development, not only for profit, but for legacy and that the profits were almost an afterthought.

12.     On or about December 7, 2016, Sam Hirbod, Hamed Adib, Plaintiff Michael Baskin and Sarah Sparks met in Paia to visit the Property and discuss the development. Plaintiff Michael Baskin indicated to Sam Hirbod that his intention was to build a home on one of the lots and emphasized how crucial was the development of the parking lot for his business operations in Paia.

13.     On or about December 8, 2016, Sam Hirbod, Hamed Adib, Plaintiff Michael Baskin and Sarah Sparks met with Michael Munekiyo, a planner and consultant, at his Wailuku office to discuss the development of the Property.

14.     On December 9, 2016, the parties met again at a restaurant to further discuss the development of the Property.

15.     On December 7, 8 and 9, 2016, EC Paia via Sam Hirbod made promises to Baskin Parties that if Baskin Parties assigned the rights under the PSA to EC Paia, EC Paia would transfer certain residential and commercial lots within the Property, providing Baskin with a lot for residential needs and license the parking lot providing Paia Bay Properties with up to 160 parking spaces and that EC Paia would cooperate in permitting process for the parking lot.

16.     Also on December 7, 8 and 9, 2016, EC Paia via Sam Hirbod promised to do whatever it would take to get the parking lot up quickly so that Paia Bay Properties could use it for its business operations, including collecting revenue from the operations of the private parking lot, and it included allowing Paia Bay

Properties to build a farmer's market around it if necessary. In reliance, Plaintiff Michael Baskin invested money into the development plans and time into meeting with consultants and the county officials.

17.     Thereafter, Baskin Parties agreed to assign its rights under the PSA to Defendant EC Paia.

18.     On December 15, 2016, Baskin Parties and EC Paia signed an Agreement pursuant to which, among other items, Baskin Parties were to assign its Interests under the PSA to EC Paia and EC Paia was to provide Baskin Parties with one commercial and one residential lot within the Property as described below (Land Agreement).

19.     Under Section 3.2(a) of the Land Agreement, EC Paia was to transfer to Baskin Parties one residential lot within the Property with a value no less than the average residential lot value on the Property (Residential Lot Transfer).

20.     Under Section 3.2(b) of the Land Agreement, EC Paia was to transfer to Baskin Parties one commercial lot within the Property with a value no less than the average commercial lot value on the Property (Commercial Lot Transfer).

21.     Further, concurrently with the Agreement, on December 15, 2016, Plaintiffs PAIA PROPERTIES, LLC; SEASHORE PROPERTIES LLC ; PAIA BAY PROPERTIES LLC and PAIA PARK, LLC, all Hawaii limited liability companies (collectively Paia Bay Properties) and EC Paia executed a Parking Lot

License Agreement for the use of a portion of the Property, of sufficient size and with roadway access, located within the specified portion of the Property for parking lot purposes providing Paia Bay Properties with up to 160 parking spaces (Parking Lot Agreement).[1] (Baskin Properties and Paia Bay Properties are collectively called Plaintiffs).

22.     Under Section 3, Paia Bay Properties was to pay a fee for the use of the parking lot premises. Paia Bay Properties is in compliance.

23.     Under Sections 5 and 7 of the Parking Lot Agreement, EC Paia was to approve the designs, plans and specification and material acceptable for parking lot.  It has failed to do so. Since the Parking lot was crucial for Baskin Parties' business operations in Paia, Baskin Parties were forced to invest money into another lot across the street to serve some of the most needed parking needs for Baskin Parties' business operations.

24.     Contemporaneously with signing of the Land Agreement, on December 15, 2016, Baskin Parties executed an Assignment Agreement, and following the execution, complied with all other obligations.

25.     On multiple occasions, including, but not limited to December 19, 2018, and September 17, 2019, Plaintiffs requested that EC Paia comply with the

---

[1] The Agreement also contemplated for the execution by Plaintiffs of other agreements, including the Joint Venture Termination Agreement, Beach Access Agreement and Plaintiffs executed them all.

terms of the Land Agreement by transferring the residential and commercial lots to Baskin Parties and to comply with the terms of the Parking Lot Agreement by approving Paia Bay Properties' plans, design and materials.

26.     EC Paia failed to perform under the Land Agreement and Parking Lot Agreement and simply ignored the communications from Plaintiffs in bad faith.

27.     EC Paia's failure to communicate regarding the plans, design, and materials acceptable for the parking lot is seriously affecting Paia Bay Properties' development of the parking lot, including but not limited to the approval of the permit application.  Plaintiffs are further affected by not receiving revenue from parking operations.

28.     Plaintiffs do not know of any liens, encumbrances and clouds of any kind on title other than Plaintiffs' own notice of pendency of action.

## COUNT I
## (Breach of Contract)

29.     Plaintiffs hereby reallege and incorporate the allegations made in the preceding paragraphs.

30.     Baskin Parties have fully performed under the Land Agreement.

31.     By failing to transfer to Baskin Parties: (i) one residential lot within the Property with a value no less that the average residential lot value on the Property and (ii) one commercial lot within the Property with a value no less that

10

the average commercial lot value on the Property, and otherwise to perform, EC Paia breached the Land Agreement.

32.     As a direct, proximate and foreseeable cause of the Defendant's inaction, Plaintiffs have and will suffer damages in an amount to shown at trial.

33.     All of the facts set forth above and all allegations within each Count are incorporated by reference in all other Counts.

**COUNT II**
**(Promissory Estoppel/Detrimental Reliance)**

34.     Plaintiffs hereby reallege and incorporate the allegations made in the preceding paragraphs.

35.     Baskin Parties were the parties to the PSA with Alexander and Baldwin for the purchase of the Property.

36.     EC Paia made promises to Baskin Parties that if Baskin Parties assigned the rights under the PSA to EC Paia, EC Paia would transfer certain residential and commercial lots within the Property and license the parking lot providing Paia Bay Properties with up to 160 parking spaces and cooperate in parking lot permitting process.

37.     EC Paia knew that Plaintiffs would rely on those promises.

38.     To their detriment, Baskin Parties reasonably relied on each of those promises and assigned its interests under the PSA to Defendant EC Paia LLC.

39.     Enforcement of EC Paia's promises to transfer one residential and one commercial lot and cooperate in parking lot permitting process are necessary to avoid an injustice.

40.     As a direct, proximate and foreseeable cause of the Defendant's inaction, Plaintiffs have and will suffer damages in an amount to shown at trial.

## COUNT III
### (Breach of The Covenant of Good Faith and Fair Dealing)

41.     Plaintiffs hereby reallege and incorporate the allegations made in the preceding paragraphs.

42.     The purpose of the contracts at issue was more than commercial advantage or profit. Defendant EC Paia via Sam Hirbod described the development to Baskin as not only for profit, but for legacy and that profits were almost an afterthought. It was to add value to community and provide prosperity for numerous people for several decades.

43.     The parties discussed a successful joint venture to develop the Property and begin with the development of the lots, the parking lot and the beach front.

44.     Defendant EC Paia and Plaintiffs entered into two contracts: the Land Agreement and Parking Lot Agreement and owed a duty of good faith and fair dealing to comply with the contractual terms and perform all acts to accomplish the purpose of the contracts.  Plaintiffs have fully performed under the contracts.

45.     Defendant EC Paia breached that duty by failing to transfer to Baskin Parties: (i) one residential lot within the Property with a value no less that the average residential lot value on the Property and (ii) one commercial lot within the Property with a value no less that the average commercial lot value on the Property.

46.     Defendant EC Paia breached that duty to Plaintiff Paia Bay Properties by failing to approve the designs, plans and specification and material acceptable for parking lot as described under Sections 5 and 7 of the Parking Lot Agreement.

47.     As a result of EC Paia's bad faith, Plaintiffs have been deprived of the benefits of the contracts.

48.     Since the Parking lot was crucial for Baskin Parties business operations in Paia, Plaintiffs were further damaged by being forced to invest money into another lot across the street to serve some of the most needed parking needs for Baskin Parties' business operations.

49.     In bad faith, Defendant failed to take any efforts to develop the property and to fulfill its promises to Baskin.  The bad faith is apparent by the inaction of Defendant in the development of the property and its refusal to communicate with Plaintiffs. It is apparent that Defendant never had any intention of developing the property as represented or fulfilling its representations to Plaintiffs.

50.     Plaintiffs are entitled to compensatory and punitive damages as a result.

## COUNT IV
## (Breach of Fiduciary Duty /Quasi Fiduciary Duty)

51.     Plaintiffs hereby reallege and incorporate the allegations made in the preceding paragraphs.

52.     The parties discussed and agreed to joint venture to develop the Property and begin with the development of the twenty-one lots, the parking lot and the beach front. The Agreement also contemplated for the execution by Plaintiffs of other agreements, including the Joint Venture Termination Agreement, Beach Access Agreement and Plaintiffs executed them all. Upon assigning the rights to the PSA to EC Paia and executing the contracts and complying with the terms, EC Paia had domination and control over the land transfers and parking lot cooperation.

53.     The nature of the relationship of the parties is akin to that of a majority owner and a minority owner. The agreements between the parties clearly indicate an intention to jointly develop the land with each party to receive certain benefits. Therefore, EC Paia had a fiduciary responsibility to, among other things, abide by and adhere to the contracts in good faith and not to engage in actions

unfairly prejudicial to Plaintiffs, who were standing in a position of the minority owners/venturers.

54.     Defendant EC Paia breached that duty by failing to transfer to Baskin Parties: (i) one residential lot within the Property with a value no less that the average residential lot value on the Property and (ii) one commercial lot within the Property with a value no less that the average commercial lot value on the Property or to take any other steps to actual develop the land as represented.  It is apparent that Defendant had no intention of living up to its promises and no intention of acting in a reasonable business-like manner.

55.     Defendant EC Paia breached that duty to Plaintiff Paia Bay Properties by failing to approve the designs, plans and specification and material acceptable for parking lot as described under Sections 5 and 7 of the Parking Lot Agreement.

56.     As a result, Plaintiffs have been deprived of the benefits of the promises and contracts on which they relied.

57.      Plaintiffs are entitled to compensatory and punitive damages as a result.

## COUNT V
### (HRS Ch. 480 UDAP and UMOC)

58.     Plaintiffs hereby reallege and incorporate the allegations made in the preceding paragraphs.

15

59.     Plaintiff Michael Baskin is a consumer for the purposes of Hawaii's UDAP law who have personally invested his resources into a personal investment in real estate.

60.     All Plaintiffs are "any person(s) who have been injured in the person's business or property" by reason of anything forbidden or declared unlawful by HRS chapter 480.

61.     Plaintiff Michael Baskin's intentions regarding the residential lot were primarily for personal, family, or household purposes.

62.     Defendant engaged in unfair and deceptive acts or practices when it wrongfully failed to transfer the residential lot to Baskin Parties within a reasonable time as promised and agreed upon.

63.     Defendant engaged in deceptive trade practices under HRS § 481A–3(a)(12) by engaging Plaintiffs in conduct which created a likelihood of confusion and/or of misunderstanding.

64.     As a result of Defendant's unfair and deceptive acts and practices, in refusing to transfer a residential lot, Plaintiff Michael Baskin has been damaged by not being able to build his home as intended and incurred attorney's fees and costs in amounts to be proven at trial.

65.     As a result of Defendant's unfair and deceptive acts and practices by failing to cooperate in the parking approvals, Plaintiffs have been further damaged

in having to invest in another lot in Paia, for the most needed parking lot purposes of Baskin Parties' business operations in Paia.

66.   Plaintiffs never would have entered into the contracts had they known that the Defendant intended to take the "discretion" afforded in the deal to completely rip them off and not even communicate about their failure to perform.

67.   As a result of Defendant's unfair and deceptive acts and unfair competition, Plaintiffs are entitled to treble damages as well as rescission.

68.   Defendant also engaged in unfair competition in violation of HRS 480.

69.   The nature of the competition that Defendant engaged in was land acquisition and development.

70.   Honest developers and those acquiring land for development adhere to their promises with their joint venturers and those with rights to the real estate they will develop.

71.   The Defendant here competed unfairly by promising Plaintiffs things it had no intention of fulfilling.  This had a negative effect on competition, as honest developers can't compete fairly with those making false promises and this directly harmed and is harming Plaintiffs, who could have sought others to buy and or develop the property.  This also has a negative impact on consumers and society

when dishonest developers are allowed to lie their way into obtaining property based on false representations.

72.     As a result, Plaintiffs did not pursue other developers who would have struck and adhered to an honest bargain.

73.     Plaintiffs are entitled to treble damages, specific performance, and rescission as a result.

**COUNT VI**
**(Intentional Misrepresentation)**

74.     Plaintiffs hereby reallege and incorporate the allegations made in the preceding paragraphs.

75.     Defendant EC Paia, via Sam Hirbod, intentionally made representations about the development plans of the Property in contemplation of Plaintiffs' reliance upon these false representations.

76.     On December 2, 2016, EC Paia, via Sam Hirbod, misrepresented to Plaintiff Baskin in a phone call that the fact that Plaintiff Baskin was involved, what he did and what he was bringing to the table ranked this Project in his top 3 business ventures, and to induce Plaintiffs' reliance he described that other business ventures he was involved in were investments in technology, fossil fuels, NBA, aviation, all aspects of retail and development making $50-250 Million dollars projects. Sam Hirbod misrepresented his intention for the development as to begin with developing twenty-one lots, the parking lot, and the beach front.

77.     On December 2, 2016, EC Paia, via Sam Hirbod, misrepresented the Project to be more for non-profit than for commercial advantage or profit. He misrepresented his intentions to build a community like Bellevue, Washington, as a project on a sizable scale, including mixed use, hotel, school, ranch style and high end, not only for profit, but for legacy and that profits were almost an afterthought.

78.     In order to induce reliance and Baskin Parties' assignment of the right under the PSA to EC Paia, on December 7, 8 and 9, 2016, Defendant EC Paia, via Sam Hirbod, misrepresented to Baskin Parties that if Baskin Parties assigned the rights under the PSA to EC Paia, EC Paia would transfer certain residential and commercial lots within the Property and license the parking lot providing Paia Bay Properties with up to 160 parking spaces.

79.     Also, on December 7, 8 and 9, 2016, Defendant EC Paia, via Sam Hirbod misrepresented that EC Paia would cooperate in permitting process for the parking lot. EC Paia promised to do whatever it would take to get the parking lot up quickly so that Paia Bay Properties could use it for its business operations, including collecting revenue from the operations of the private parking lot, and allowing Paia Bay Properties to build a farmer's market around it if necessary.

80.     Plaintiffs relied on those misrepresentations and assigned the PSA to EC Paia.

81.    Plaintiff Baskin Parties relied on EC Paia misrepresentations regarding full cooperation on the Parking lot approval. Baskin Parties relied on those misrepresentations in investing money into the parking development plans.

82.    Despite these promises, EC Paia have intentionally failed to transfer the residential and commercial transfers to Baskin Parties and to cooperate with Plaintiff Paia Bay Properties in approving the designs, plans and specification and material acceptable for parking lot as described under Sections 5 and 7 of the Parking Lot Agreement.

83.    The Defendant's conduct was intentional and deceptive and Defendant took no steps to fulfill its promises and simply and flatly refused to even communicate with Plaintiffs.

84.    Defendant's acts and omissions justify an award of general, special and punitive damages in an amount to be proven at the trial of this matter.

## COUNT VII
### (Negligent Misrepresentation)

85.    Plaintiffs hereby reallege and incorporate the allegations made in the preceding paragraphs.

86.    As set forth above, EC Paia, via Sam Hirbod, made numerous false representations to Plaintiff Michael Baskin regarding the Property and the purpose of the development project, the legacy that the Project would bring and the

obligations to make certain transfers under the contracts as more fully described in Paragraphs 74-79.

87.   EC Paia knew or should have known that these representations were false and misleading, and that Plaintiffs would rely on these representations to his detriment.

88.   In order to induce reliance and Baskin Parties' assignment of the right under the PSA to EC Paia, on December 7, 8 and 9, 2016, Defendant EC Paia, via Sam Hirbod, falsely represented to Baskin Parties that if Baskin Parties assigned the rights under the PSA to EC Paia, EC Paia would transfer certain residential and commercial lots within the Property and license the parking lot providing Paia Bay Properties with up to 160 parking spaces.

89.   Also, on December 7, 8 and 9, 2016, Defendant EC Paia, via Sam Hirbod, falsely represented that EC Paia would cooperate in the permitting process for the parking lot. EC Paia promised to do whatever it would take to get the parking lot up quickly so that Paia Bay Properties could use it for its business operations, including receiving revenue from parking operations, and allowing Paia Bay Properties to build a farmer's market around it if necessary.

90.   Plaintiff Baskin relied on those misrepresentations and assigned the PSA to EC Paia.

91.    Plaintiff Baskin Parties relied on EC Paia misrepresentations regarding full cooperation on the Parking lot approval. Moreover, in reliance on promised cooperation, Plaintiff Michael Baskin invested money into the development plans and time into meeting with consultants and the county officials.

92.    Despite these promises, EC Paia have failed to transfer the residential and commercial transfers to Baskin Parties and to cooperate with Plaintiff Paia Bay Properties in approving the designs, plans and specification and material acceptable for parking lot as described under Sections 5 and 7 of the Parking Lot Agreement.

93.    The Defendant's conduct was deceptive, and it misrepresented and breached its promises (occluding their promises to convey the lot and their promise to sign off on the road and parking plans.)

94.    The Defendant's conduct was negligent, deceptive of the foreseeable consequences to Plaintiffs.

95.    The false information (a) was supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (b) the Plaintiffs were persons for whose benefit the information was supplied and suffered a loss; and (c) the Plaintiffs relied and reasonably relied upon the misrepresentation.

96.     Defendant's acts and omissions justify an award of general, special and punitive damages in an amount to be proven at the trial of this matter.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for a judgment and other relief in their favor and against Defendant as follows:

A.     For a specific performance for any of Plaintiffs' claims for which specific performance is available, viz. that this Court determines that EC Paia shall transfer to Baskin Parties: (i) one residential lot within the Property with a value no less that the average residential lot value on the Property and (ii) one commercial lot within the Property with a value no less that the average commercial lot value on the Property.

B.     For a declaratory and injunctive relief for any of Plaintiffs' claims for which declaratory or injunctive relief is available, viz. that this Court determines that Plaintiffs are entitled to an order declaring that EC Paia shall cooperate in approval of designs, plans and specification and material acceptable for parking lot immediately.

C.     That this Court determines that the interests of Baskin Parties in the Property are as set forth in this Complaint and/or appoint a Special Master if these interests cannot be reasonably determined.

D.     For rescission.

E.      That this Court award Plaintiffs all attorneys' fees costs and interest (including pre- and post-judgment interest);

F.      That this Court award Plaintiffs special, general, treble and punitive damages against Defendant in amounts to be proven at trial;

G.      That the Court rescind the land sale contract;

H.      That this Court award Plaintiffs such other and further relief as may be just and equitable in the premises.

 DATED: Honolulu, Hawaii, September 10, 2020.

/s/Terrance M. Revere
TERRANCE M. REVERE
CLARISSE M. KOBASHIGAWA
MAGDALENA BAJON
Attorneys for Plaintiffs